**CLINE v. NIBLO et al.    (No. 9643.) ***

(Court of Civil Appeals of Texas. Dallas. May 15, 1926. Rehearing Denied June 26, 1926.)

1. **Homestead** ⬳139—Homestead estate of constituent members of family of deceased parent is right to use property as homestead so long as they wish (Const. art. 16, § 50).

    Homestead estate of constituent members of family of deceased parent, under Const. art. 16, § 50, is their right to continue using property as homestead so long as they wish.

2. **Executors and administrators** ⬳53—Children inherit real property in equal portions, subject to use by constituent members of family of homestead, which is not subject to administration (Const. art. 16, §§ 50 and 52).

    Under Const. art. 16, §§ 50 and 52, providing for homestead, children inherit real property in equal portions, subject to use by constituent members of family of homestead, which must be set aside for such purpose and is not subject to administration.

---

⬳For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Writ of error granted November 3, 1926.

**3. Homestead ⊜⟿150(1)—Failure of probate court to set aside homestead divests children of no right and confers no right on purchaser at administrator's sale.**

Failure of probate court to enter order setting aside homestead for use of constituent members of family divests children of deceased of no right and confers no right on purchaser of homestead at administrator's sale.

**4. Judgment ⊜⟿497(1)—Rule that unless judgment or its record speaks its own infirmity it is immune from collateral attack does not apply to judgments, orders, or decrees in matters over which court has no jurisdiction.**

Rule that unless judgment or its record speaks its own infirmity it is immune from collateral attack does not apply to judgments, orders, or decrees entered in matters over which court is forbidden to take jurisdiction.

**5. Judgment ⊜⟿475.**

Orders and judgments of probate court are immune from collateral attack only when court has jurisdiction to act in matter.

**6. Executors and administrators ⊜⟿388(1)—Deed of administratrix to homestead, based on order of probate court, is a nullity as against children, since court had no jurisdiction.**

Deed of administratrix to homestead, based on order of probate court, was a nullity as against children, as order was void since court had no jurisdiction to administer upon the property.

**7. Appeal and error ⊜⟿843(2).**

Where parties decreed to have no interest in land did not appeal, issue as to their estoppel to assert interests is not presented.

**8. Estoppel ⊜⟿70(1)—Children held not estopped to claim homestead because they permitted purchase of it from administratrix of parent's estate without protest and afterwards resided on property purchased with proceeds of sale.**

Children *held* not estopped to claim title to homestead because they permitted purchase of homestead from administratrix of parent's estate without protest, and constituent members of family subsequently resided on property purchased with proceeds of sale, where all proceeds not used in paying lien debt were so invested, and children mistakenly believed deed was valid.

**9. Executors and administrators ⊜⟿389—That grantee of homestead under void deed from administratrix made improvements in good faith held to appear from facts stated.**

That grantee of homestead under void deed from administratrix made improvements in good faith *held* to appear from want of knowledge of homestead claim and want of notice that orders authorizing deed were void, belief in their validity, and making of improvements relying on such belief.

**10. Appeal and error ⊜⟿1177(2).**

In trespass to try title, where trial court did not follow Rev. St. 1925, arts. 7394–7401, prescribing issues for the jury and the nature of the judgment to be entered, appellate court has no basis on which to enter correct judgment.

⊜⟿For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Appeal from District Court, Dallas County; Louis Wilson, Judge.

Trespass to try title by Victor Niblo and others against J. L. Cline. Defendant filed cross-action of trespass to try title against plaintiffs and others. From the judgment, defendant appeals, and plaintiff Victor Niblo and others file cross-assignments of error. Affirmed in part, and in part reversed and remanded, with directions.

Burgess Owsley, Storey & Stewart, of Dallas, for appellant.

W. L. Curtis, of Dallas, for appellees.

JONES, C. J. This appeal is perfected by J. L. Cline, appellant, from a judgment of the district court of Dallas county, in which he was awarded title to a three-ninths interest in and to lots 1 and 2 in block 58, Dallas Land & Loan Company's second addition to Oak Cliff in the city of Dallas, and certain improvements made by him on lot 2, and in which he was denied judgment for the remaining six-ninths interest in said lots, title thereto being awarded to appellees, who are six of the nine children of Anna Niblo, deceased. Appellant was also decreed title to lot 3 in said block, about which no complaint is here made. Appellees file cross-assignments of error in reference to that portion of the judgment awarding the improvements.

We find the facts to be that Mrs. Anna Niblo, a resident of Dallas county, Tex., died intestate in December, 1920; that at the time of her death she was a widow and owned, in her own right, the three said lots; and that lots 1 and 2 constituted her homestead, on which she resided; the family at the time of her decease consisted of herself, an adult unmarried daughter, Ethel Niblo, and two minor children, Bara and Elmo Niblo. At the time of the purchase of this property in 1903, the husband, H. C. Niblo, was living, but Mrs. Anna Niblo was named as the grantee in the conveyance. In 1913 H. C. Niblo, the husband, conveyed the property to Mrs. Anna Niblo. The husband died in the year 1914. From the time of the purchase of the property until about two years after the death of the husband the three lots were used as the homestead, the family residing in a two-story house situated on portions of lots 1 and 2. Mrs. Niblo then abandoned the use of lot 3 as a part of the homestead, and a two-story residence was erected thereon to be used for rental purposes. A large portion of the cost of this building was on credit, and this indebtedness was secured by a deed of trust on said lot. At the time of the death of Mrs. Niblo there remained unpaid of this indebtedness approximately $4,000. The entire estate of Mrs. Anna

Niblo consisted of the above-named real estate and household and kitchen furniture.

The daughter, Ethel Niblo, on application made by her, was duly appointed administratrix of the said estate, and duly qualified as such administratrix. The application represented that in addition to the regular debts of the estate one house and lot were incumbered by a lien indebtedness in the sum of about $4,000, and that an installment of interest was past due, but did not further describe the indebtedness of the estate. Her appointment as administratrix was of date July 5, 1921. The inventory returned showed the property belonging to the estate to consist of said lots 1, 2, and 3, block 58 of said addition, and household and kitchen furniture. An application by the administratrix to sell the real estate alleged that there was a lien indebtedness against lot 3 in the sum of $3,906.66; that there was a general indebtedness against the estate of $248.94; and that "there are also indebtedness for taxes, court costs, attorney's fees and so on in an amount unknown to the petitioner." It was also alleged that the estimated expense of the administration was the sum of $750. It was further alleged that a necessity existed for the sale of said lots 1, 2, and 3, block 58, of said addition; that "residences" were on these lots; and that the situation of such residences was such as "to make it impossible to sell a part of said land at advantage, but it is necessary to sell the whole, and also plaintiff shows to the court that sale of no one or two of said lots would produce sufficient revenue to discharge said debts."

The court directed a sale of said lots, and subsequently appellant was secured as the purchaser. The consideration to be paid by appellant was the sum of $5,750 cash and the discharge of the lien indebtedness against lot 3. This sale was duly reported to the probate court, and in all things confirmed, and the administratrix directed to make deed. Russell Niblo, one of the said children, objected and protested said sale and appealed to the district court. The ground of his protest is not shown by this record. When the case was called for trial in the district court, the said protestant dismissed the appeal, and the usual judgment was entered in the district court approving the order of sale and directing its certification to the probate court. The probate court, when the matter of the sale again came up in that court, heard evidence on the report of sale, and again approved same and directed its consummation by the administratrix. This was done by the administratrix's executing and delivering to appellant a deed in proper form, and receiving from him payment of the cash consideration. Appellant, at the time of this suit, had discharged the said lien indebtedness. Those who were constituent members of the family of deceased at the time of her death resided on said property for some time thereafter, but, at the time of the final approval of the sale of the administratrix, were not residing thereon. Another house was purchased with the money secured from appellant, and the said constituent members of deceased's family have since resided in said house.

There was no application made to the probate court to set aside the homestead to those authorized to occupy same, and no order entered by the probate court setting such homestead aside for said purpose; neither the application for administration nor the application for sale of the property, nor the report of sale, mentioned the fact that lots 2 and 3 were the homestead of the family. The application for sale did present to the court the fact that there were minor heirs interested in the estate.

When appellant went into possession of the property under said sale, he wrecked the house that stood on lots 1 and 2, and which had always been the home of the family, and erected on lot 2 a "duplex cottage," using some of the material in the old house in such construction.

On September 26, 1923, Victor Niblo, Russell Niblo, Stella Francisco, a married daughter of deceased, joined by her husband, J. P. Francisco, Bara Niblo, and Elmo Niblo, the latter two being minors and suing by their next friend, Oscar Niblo, brought this suit in the district court of Dallas county against appellant in the form of trespass to try title to the three said lots. Appellant answered by a plea of not guilty, and further by a special plea setting up his title through the administration of the Anna Niblo estate, alleging the facts as above stated and also basing thereon a plea of estoppel. In addition to this answer, he filed a cross-action in form of trespass to try title against the plaintiffs in this suit and against the four remaining children of Anna Niblo to recover the said three lots of land.

The trial court held, as a matter of law, that the deed of conveyance to appellant by the administratrix conveyed title to appellant in lot 3; that as a matter of law, by virtue of said deed and the acts and conduct of Ethel Niblo, Grady Niblo, and Russell Niblo, appellant has title to their three-ninths interest in lots 1 and 2; and that, as a matter of law, the deed of the administratrix did not divest Bara Niblo, Victor Niblo, Elmo Niblo, and Urban Niblo of title to their interests in lots 1 and 2; and that, under the findings of the jury on the issue of estoppel, Stella Francisco and Oscar Niblo were not estopped to claim their interests in said lots 1 and 2; and that, as a matter of law, the improvements placed on lot 2 by appellant

· after his said purchase were made in good faith.

The issue of estoppel of Ethel, Grady, and Russell Niblo is not before this court, because they accepted the judgment of the lower court. We are, however, of the opinion that the evidence failed to raise the issue of estoppel on the part of Oscar Niblo and Stella Francisco, and that the court should have held as a matter of law that they were not estopped to claim their interest in said lots 1 and 2.

It appeared without dispute in the evidence that at the time of the death of Mrs. Anna Niblo said lots 1 and 2 constituted her homestead, and that said lots were free from any liens or incumbrances. It likewise appeared that said lot 3 at said time was not a part of the homestead, and was incumbered with a valid lien to secure an indebtedness of the deceased in the sum of approximately $4,000. It also appeared from the evidence without dispute that at the time of her death, Ethel Niblo, an unmarried adult daughter, and Bara and Elmo Niblo, minor children of deceased, were living with her as constituent members of her family. The undisputed evidence further showed that, excluding the said homestead, deceased's estate was insolvent.

[1, 2] Upon the death of Mrs. Anna Niblo her property, including the homestead, immediately vested in her said nine children in equal portions. Const. art. 16, § 52. The estate thus vested in the children by virtue of the said provision of our organic law was subject to the homestead estate created by section 50 of the Constitution in favor of those who were constituent members of the family of the deceased at the time of her death. This estate consists of the right of said constituent members of the family to continue the use of said property as their homestead so long as they may elect to do so, or so long as a necessity exists for such use. When these two provisions of our Constitution are construed together and applied to the instant case, they carry the mandate that the said nine children shall inherit in equal portions the entire property, subject to the use of the homestead by the said constituent members of the family; that the homestead shall be set aside for such purpose and shall not be subject to administration by the probate court. Griffin v. Harris et al., 39 Tex. Civ. App. 586, 88 S. W. 493; Ross v. Martin et al. (Tex. Civ. App.) 128 S. W. 718; Dignowity et al. v. Baumblatt, 38 Tex. Civ. App. 363, 85 S. W. 834; Ward et al. v. Hinkle et al. (Tex. Civ. App.) 252 S. W. 236; Robinson et al. v. Seales et al. (Tex. Civ. App.) 242 S. W. 754; Stephenson v. Marsalis, 11 Tex. Civ. App. 162, 33 S. W. 383; Zwernemann v. Von Rosenberg, 76 Tex. 522, 13 S. W. 485; Childers v. Henderson, 76 Tex. 667, 13 S. W. 481; Hall v. Fields, 81 Tex. 553, 17 S. W. 82;

American Bonding Co. of Baltimore v. Logan, 106 Tex. 306, 315, 166 S. W. 1132.

[3] It is now the settled law of this state that the failure of the probate court to enter an order setting aside the homestead for the use of the constituent members of the family divested the said children of no right and conferred no right on appellant. In considering the effect of such failure, the Supreme Court in the case of American Bonding Co. v. Logan, supra, said:

"Clearly mere failure of the probate court to set the homestead apart for the use and benefit of said members of his family divested said heirs of no constitutional or statutory right, and conferred no right whatever upon appellant."

The case of Griffin v. Harris, supra, is equally clear on this question:

· "That the court failed to perform its full duty and set aside this property as the homestead at the first term of court after the inventory and appraisement were filed, as required by statute * * * did not have the effect of waiving the homestead exemption and making it liable for the debts of the estate."

[4-6] In the instant case the homestead of the family was made the subject of administration, subordinated to the rights of general creditors of the estate, and the constitutional and statutory rights of the said children ignored. Appellant acquired title to lots 1 and 2 by virtue of a purchase of the property under an order of sale allowed by the probate court for the purpose of paying general creditors of the estate. The suit filed by appellee is a collateral attack upon the proceedings of the probate court, under which appellant acquired his asserted title to said lots 1 and 2. The controlling question then is, are such probate proceedings subject to collateral attack?

If the probate court was empowered with jurisdiction to pass upon the questions involved in the making of said orders, then they would not be subject to the attack here made. If the probate court was without jurisdiction to administer upon the said homestead property, and without jurisdiction to order the property sold and to pass upon the wisdom of the sale, then the orders entered are a nullity and are subject to the attack here made. It is true that the record of these probate proceedings does not disclose the fact that this property was the homestead of deceased and that she left surviving her constituent members of her family, and appellant seeks to invoke the rule that, unless a judgment or its record speaks its own infirmity, it is immune from collateral attack. This rule has no application to judgments, orders, or decrees entered by a court in matters over which the court is forbidden by constitutional mandate or statutory enactment to take jurisdiction. In all of the cases

above cited in which the jurisdiction of the county court, to administer upon an estate that was insolvent, and there were constituent members of the family still surviving, the attack made upon the probate orders in such administration was in each instance collateral. The orders and judgments of a probate court are immune from collateral attack only when such court is given jurisdiction to act in such matters.

In the case of Griffin v. Harris, supra, this court, through Associate Justice Bookhout, said:

"The question as to whether the purchaser, under the facts of this case, acquired a good title, is not controlled by the fact that the records in the guardianship proceedings failed to show that the property was the homestead of the lunatic. As we understand it, the test is, Was the property the homestead, in fact, of the lunatic at the time it was ordered sold, and at the time the sale was confirmed?"

Then again the opinion says:

"The county court not having the power to order the sale [of the homestead], no title passed to the purchaser at a sale made in pursuance of such order. The order was a nullity, and it is immaterial whether the purchaser had knowledge of the fact that the property was the homestead or not. Having purchased under a void order, he took no title."

The Supreme Court denied a writ of error in this case.

In the case of Ross v. Martin, supra, Chief Justice Rainey, speaking for this court, said:

"Ross contends that he holds title to said land through an administration sale, which is binding, and cannot be attacked collaterally as was done in this case. It is true, judgments of the probate court cannot be attacked collaterally when rendered in the administration of estates over which they have power to act. It assumed jurisdiction of the estate of Seely Martin, which was insolvent, consisting of the 100-foot lot in controversy, which was her homestead at her death, and there were constituent members of the family, her heirs, living. The homestead of an insolvent estate where constituent members of the family survive is not subject to administration, but descends to those entitled to inherit free from claims of creditors. * * * We are of the opinion that the proceedings of the probate court were not immune from collateral attack."

We therefore hold that the deed of the administratrix to appellant to lots 1 and 2 was based on a void order of the probate court and was of itself a nullity as against appellees.

[7, 8] It is urged by proper assignment of error that appellees are estopped from asserting any claim to the land because they permitted appellant without protest to purchase the land constituting the homestead, and the constituent members of the family have since resided on other property purchased with a portion of the proceeds of the sale of the homestead. Complaint is also made that certain findings of the jury to the effect that Bara and Oscar Niblo had no knowledge of appellant's purchase is entirely unsupported by evidence. This latter inquiry we deem immaterial, because we do not believe that the evidence raised the issue of estoppel contended for. The evidence is undisputed that none of the appellees received their distributive share, as all the money that was not used in paying the lien debt was invested in a smaller home. The fact that the children of the deceased were mistaken in their belief in the validity of the order of sale entered by the probate court and the deed of conveyance executed by the administratrix thereunder, and, in consequence of this erroneous belief, entered no protest to appellant, would not constitute such an affirmative act on their part as would estop them from asserting their title. Wilkin v. Owens, 102 Tex. 197, 114 S. W. 104, 115 S. W. 1174, 117 S. W. 425, 132 Am. St. Rep. 867; Schnabel v. McNeill (Tex. Civ. App.) 110 S. W. 558; Broocks v. Payne, 58 Tex. Civ. App. 513, 124 S. W. 463. It must be borne in mind that Ethel Niblo, the administratrix, Grady Niblo, an attorney and who advised with the administratrix, and Russell Niblo, who appealed from the order of sale and against whose protest a judgment was entered in the district court, were decreed to have no interest in the land, their interest being vested in appellant, from which they have not appealed. The issue as to whether they were estopped to assert their interest in the land is therefore not before this court. Nona Mills Co. v. Jackson (Tex. Civ. App.) 159 S. W. 932; Gutheridge v. Gutheridge (Tex. Civ. App.) 161 S. W. 892; State v. Dayton Lbr. Co. (Tex. Civ. App.) 164 S. W. 48.

[9] The court correctly assumed that appellant had made improvements on the land in good faith. This appears from the fact that he did not know of the homestead claim and had no notice whatever that the orders and decrees of the county court authorizing the deed by the administratrix vesting title in him were void, but believed said orders to be valid, and, acting on such belief, made the improvements. The judgment of the court in respect thereto, however, cannot be sustained against the cross-assignment of error by appellees.

[10] Articles 7394 to 7401, inclusive, Revised Statutes 1925, prescribe the issues to be submitted to the jury in cases of this kind and the nature of the judgment to be entered. This procedure was not followed in any particular by the trial court, and there is no basis upon which this court can enter the correct judgment. That portion of the judgment in reference to the improvements

will be reversed and remanded for another trial so as to adjust between the parties the matter of improvements and rents in conformity to said statutory enactments.

It is therefore the opinion of this court that the judgment of the lower court should be affirmed in decreeing title to lot 3 in appellant; also in decreeing title to appellant in a three-ninths interest in and to lots 1 and 2, such interest being that inherited by Ethel Niblo, Grady Niblo, and Russell Niblo, and in divesting appellant of title to the remaining six-ninths interest in said lots 1 and 2 and decreeing same in appellees; but that portion of the judgment disposing of the improvements on lots 1 and 2 should be reversed and remanded, with direction to the trial court that he ascertain the facts required to be found in reference to said improvements by the above cited statutes, and that judgment be entered in accordance with said statutory requirements under such findings.

Affirmed in part, and reversed and remanded in part.